# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM HUDSON, individually and on behalf of all other all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PROTECH SECURITY GROUP, INC. and KEITH BENSON,<br><br>Defendants. | Case No. 15 C 11046<br><br>Magistrate Judge Sidney Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

On December 9, 2015, plaintiff William Hudson brought suit on behalf of himself and a group of allegedly similarly situated security officers and patrol personnel currently and formerly employed by defendants Protech Security Group and its president, Keith Benson (collectively, "Protech"), for violations of the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), and Illinois Wage Payment and Collection Act ("IWPCA") (doc. # 1: Compl.). The parties have conducted limited discovery into certification of a class or collective action, and plaintiff has now filed a motion for conditional certification of an opt-in class and approval of notice pursuant to 29 U.S.C. § 216(b) (doc. # 25); plaintiff does not seek, at this time, certification of a class pursuant to Federal Rule of Civil Procedure 23. For the reasons that follow, we grant plaintiff's motion for conditional certification, and postpone ruling on plaintiff's proposed opt-in notice until the parties meet and confer on this issue.

---

[1] On November 8, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 39).

# I.

"Among its other provisions, the FLSA requires employers to pay overtime compensation to covered employees who work more than 40 hours in a given week. The rate of overtime pay must be 'not less than one and one-half times the regular rate' of the employee's pay." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2121 (2016) (quoting 29 U.S.C. § 207(a)). Section 16(b) of the FLSA "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA. A suit brought on behalf of other employees is known as a 'collective action.'" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013) (quoting 29 U.S.C. § 216(b)). Unlike a class action brought pursuant to Federal Rule of Civil Procedure 23, under the FLSA, "plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)).

Neither the FLSA nor its implementing regulations define the term "similarly situated," and neither the Supreme Court nor the Seventh Circuit has specified a procedure courts must employ to decide certification and notice issues under the FLSA. *Allen v. City of Chicago*, No. 10 C 3183, 2013 WL 146389, at *2 (N.D. Ill. Jan. 14, 2013) (Schenkier, J.). However, courts in this district have commonly applied a two-stage test to determine whether an FLSA claim may proceed as a collective action. *See Boltinghouse v. Abbott Labs. Inc.*, 15-6223, 2016 WL 3940096, at *2 (N.D. Ill. July 20, 2016). "At the first stage, the court makes an initial determination whether notice should be sent to potential opt-in plaintiffs who may be similarly situated to the named plaintiff." *Steger v. Life Time Fitness, Inc.*, No. 14-6056, 2016 WL

2

6647922, at *1 (N.D. Ill. Nov. 10, 2016). To demonstrate that potential opt-in plaintiffs are similarly situated at this stage, the named plaintiff "must make a modest factual showing sufficient to demonstrate that she and the potential opt-in plaintiffs were victims of a common policy or plan that violated the FLSA." *Id.* "In the second stage, following the completion of the opt-in process and merits-related discovery, a defendant may move to decertify the conditional class. In that event, a court must reevaluate the conditional certification in a more stringent inquiry." *Allen*, 2013 WL 146389, at *3.

## II.

In this case, plaintiff contends that Protech maintains an unlawful policy to not pay plaintiff and similarly situated employees for all time worked, including failing to pay them overtime at a rate of one and a half times their regular rate and wrongfully classifying Protech's employees as independent contractors, in an effort to avoid paying overtime wages (doc. # 1: Compl., ¶¶ 17, 21-22). In its answer to plaintiff's complaint, Protech states that it paid employees for the time they worked, including "additional compensation" for security officers who worked more than forty hours per week (doc. # 13: Defs.' Ans. to Compl., ¶¶ 17, 21). Protech explains that this additional compensation was paid as a "bonus for working overtime," and that these bonuses "often exceeded the technically correct overtime amount" (*Id.*, ¶ 40). However, Protech "lacks knowledge or information sufficient to form a belief as to whether such payments were less than the technically correct overtime amount" (*Id.*). Protech agrees that it sometimes classified security workers as independent contractors rather than employees, but states that such classification changes are made at the employees' request (*Id.*, ¶ 18).

This case is currently at stage one of the collective action analysis: the parties have done initial opt-in discovery (which has not included any depositions), and plaintiff has filed a motion

3

for conditional certification. To determine whether plaintiff has made the required modest factual showing, "plaintiffs must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (internal quotations omitted). To make that showing, Mr. Hudson, who was employed as a security officer at Protech from approximately 2001 through 2015, attaches his own affidavit, a sampling of Protech's payroll records, and attorney-created "summary tables" based on the Protech records as evidence in support of his claim that Protech subjects its employees to a common policy that violates the FLSA.

In his affidavit, plaintiff attests that throughout his employment with Protech, he and other security officers worked in excess of forty hours during most individual work weeks and were "not paid time and half, or overtime wages, for such work" (doc. # 26: Pl.'s Mem. in Supp. of Mot. for Cond'l Cert., Ex. 5: Hudson Aff., ¶ 9). In addition, Mr. Hudson states that although he always performed work for Protech as an employee and never requested to be paid as an independent contractor, Protech would sometimes classify him and other employees as independent contractors (*Id.*, ¶ 10). Mr. Hudson also states that he and other security officers were required to follow Protech's rules, policies and procedures, and if they did not, they would be disciplined, including having time "docked" or deducted from their time sheets (*Id.*, ¶ 7).

In addition, based on a sampling of pay periods culled from the approximately 11,000 payroll records Protech produced for the time period 2013 to April 2016 (Pl.'s Mem. at 3-4 n.1), plaintiff offers summary tables indicating that Protech's security officer employees "worked sixty, seventy, sometimes eighty hours in a single week and despite these oppressive hours,

4

according to Defendants' own payroll records, the security officers were not paid overtime wages for such work" (doc. # 44: Pl.'s Reply at 2; *see* Pl.'s Mem., Ex. 6: Payroll Tables). Thus, plaintiff contends that this exhibit shows that Protech routinely and continuously violated the FLSA (Pl.'s Mem. at 3-4 n.1). Significantly, defendants do not question the correctness of the summary tables offered by plaintiff.

### III.

Protech contends that the affidavit and payroll evidence are not enough, at the conditional certification stage, to show that its policies violated the law or that Mr. Hudson was similarly situated to other security officer employees (doc. # 42: Defs.' Resp. to Pl.'s Mot. for Cond'l Cert. at 3-4). Protech argues that in order to obtain conditional certification, plaintiff had to submit additional evidence from other employees, written policies, and/or deposition testimony (*Id.*). We disagree.

Initially, Protech objects to plaintiff's affidavit because it does not "suggest that he has personal knowledge of the allegations" (Defs.' Resp. at 2).[2] In response to Protech's objection, plaintiff attached to his reply brief an "amended" affidavit from Mr. Hudson that is identical to his original affidavit, except that it adds the paragraph: "I am over eighteen years old, of sound mind and the statements made herein are true, correct and based entirely upon my own personal knowledge, my experiences and my interactions with Defendant Keith Benson, Protech management and other security officers" (Pl.'s Reply, Ex. 1: Hudson Am. Aff., ¶ 2). Contrary to

---

[2]Defendants also assert that Mr. Hudson's complaint was not verified, in an apparent effort to undermine the veracity of the allegations in the complaint (Defs.' Resp. at 1). This argument is a non-starter because in this opinion, we rely only on: (a) defendants' answers to the allegations in plaintiff's complaint, which "constitute[] binding judicial admission[s]," *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005); (b) allegations set forth in Mr. Hudson's sworn affidavit; and (c) summaries of defendants' own payroll records, whose accuracy defendants do not contest.

Protech's contention, Mr. Hudson obviously has personal knowledge of his own experience as a Protech employee.

That said, we agree that even with the amendment, Mr. Hudson's basis for personal knowledge of the activities and experiences of "other security officers" is less clear. *See, e.g., Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *4 (N.D. Ill. Jan. 20, 2009) (determining that a security guard without management or human resources experience had no basis for personal knowledge of the activities and experiences of his coworkers). Nevertheless, the payroll exhibit, combined with Mr. Hudson's affidavit attesting to his own experiences and Protech's answers to plaintiff's complaint, are sufficient to establish a "modest factual showing" that Mr. Hudson and similarly situated employees of Protech were subject to a common policy that violated the law. *See Pieksma*, 2016 WL 7409909, at *1.

*First*, the payroll records and summary tables plaintiff relies on support his claim that security officers were routinely not paid overtime wages (Pl.'s Reply at 4). These records show that during various time periods, at least eighteen security officer employees of Protech worked more than forty hours per week but were not paid overtime wages as required by the FLSA (Pl.'s Mem., Ex. 6). Protech does not dispute that plaintiff's Exhibit 6 makes this showing (*see* Defs.' Resp. at 2-3 (arguing that this exhibit shows there are fewer than 70 to 100 potential plaintiffs, but not arguing that the exhibit fails to show that eighteen plaintiffs who worked more than 40 hours a week were not paid overtime)).

*Second*, in its answer to plaintiff's complaint, Protech admits that it may not have paid its employees "the technically correct overtime amount" under the FLSA (Defs.' Ans., ¶ 40). Specifically, Protech asserts that it paid its security officer employees a "bonus for working overtime," or "additional compensation" for hours worked over forty hours per week (*Id.*, ¶¶ 17,

21). But the FLSA requires that the rate of overtime pay be at least one and one-half times the regular rate of the employee's pay. Protech does not offer evidence or argument that the "additional compensation" it paid was sufficient to satisfy that obligation. Thus, the fact that Protech paid its employees some unspecified additional compensation or bonus for overtime work does not undermine plaintiff's showing that Protech did not pay overtime wages in accordance with the FLSA.

*Third*, Mr. Hudson's affidavit attesting that Protech involuntarily classified him as an independent contractor to avoid paying him overtime wages under the FLSA, together with Protech's admissions that it sometimes categorized Mr. Hudson and other employees as independent contractors, also creates the required "modest factual showing" that supports conditional certification. Plaintiff may make a modest factual showing that conditional certification is warranted under the FLSA by presenting evidence that similarly situated employees were subject to the same policy that misclassified them as exempt employees. *See Tamas v. Family Video Movie Club*, Inc., No. 11 C 1024, 2013 WL 4080649, at *3-4 (N.D. Ill. Aug. 13, 2013); *Salmans v. Byron Udell & Assocs., Inc.*, No. 12-3452, 2013 WL 707992, at *5 (N.D. Ill. Feb. 26, 2013) (corporate policy that designated all account executives as exempt was sufficient to meet conditional certification requirement); *Olmsted v. Residential Plus Mtg. Corp.*, Nos. 08-142, 08-419, 2008 WL 5157973, at *3 (N.D. Ill. Dec. 9, 2008) (class conditionally certified where plaintiff cited policy of routinely misclassifying employees).

Protech makes the circular argument that plaintiff cannot show that he was similarly situated to other employees because plaintiff "was treated as an independent contractor" (Defs.' Resp. at 4), even though Mr. Hudson was at times treated as an employee and other employees were at times treated as independent contractors (Defs.' Ans. at ¶¶ 8, 18). Rather than

7

undermining plaintiff's request for conditional certification, Protech's argument bolsters it by admitting that Protech sometimes treated plaintiff and other employees as independent contractors -- and thus exempt from the FLSA. While Protech states that it classified employees as exempt only at their request, the alleged reasons that Protech classified individuals as independent contractors or employees do not contradict the evidence that Protech classified Mr. Hudson and other employees as exempt and thus did not pay them overtime in the manner required by the FLSA. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 381 (7th Cir. 2015) (neither a "good faith violation" of the FLSA nor "an agreement between the employee and the employer to work for less than the required wage" absolves the employer of liability for violating the FLSA, though it may be relevant for purposes of determining the extent of an employer's liability and damages).

In light of the aforementioned evidence, we find that plaintiff has made the required modest factual showing that conditional certification is warranted. We thus use our "wide discretion" to grant plaintiff's motion for step one, conditional certification. *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-10447, 2016 WL 1043429, at *6 (N.D. Ill. Mar. 16, 2016).

## IV.

As a result of this conditional certification, we will authorize plaintiff to send notice of the case to similarly situated employees, who will then have an opportunity to opt-in as plaintiffs. *Allen*, 2013 WL 146389, at *2-3. Plaintiff proposes to send out notice to those for whom the following applies:

> If at any time since April 19, 2013, you were a security officer for Protech Security Group, Inc., regardless of whether you received a "W-2" or "1099" tax form or whether you were classified as an "employee" or "independent contractor," if you believe you worked more than forty (40) hours in any work week but were not paid overtime pay and/or if you believe you were not paid for

all time worked, including but not limited to having time "docked" for alleged rule violations, you may choose to join this action . . .

(Pl.'s Mem., Ex. 1: Proposed Class Notice). Plaintiff estimates that between 70 and 100 individuals would come within this class definition (Pl.'s Mem. at 9). Plaintiff seeks to have its notice given by several methods: mailed to all potential plaintiffs, posted at a conspicuous location at Protech's office, enclosed in Protech's envelopes with its regularly scheduled payroll, emailed to all potential plaintiffs, and mailed a second time as a reminder (*Id.* at 10-11; Pl.'s Mot. at 2).

Protech argues that plaintiff's proposed notice is overbroad because (a) plaintiff has provided no evidence that Protech "docked" time or money from paychecks for alleged rule violations (Def.'s Resp. at 1), and (b) the number of individuals to whom notice is sent should be limited to the 18 individuals listed in plaintiff's exhibit 6 (*Id.* at 2-3). Alternatively, Protech argues that distribution of the notice should be limited to the "quite small" number of individuals who were treated as independent contractors (*Id.* at 5). Protech also contends that the overlapping methods of delivery of notice are "incredibly complex and time-intensive" (*Id.*). Finally, Protech argues that it should not be required to produce a list of employees and their contact information because that information is included in the payroll records they already produced to plaintiff (*Id.*). Protech has not proposed an alternative form or method of notice.

For the reasons we have given, we decline to limit the dissemination of notice to the 18 employees identified in plaintiff's exhibit 6. Those employees' records constituted a sampling of the large number of pay records defendants produced, not an exhaustive list of those who did not receive overtime for work in excess of 40 hours. We also will not limit the notice to those who were treated as independent contractors, and we will include those who claim improper docking of time.

However, in light of this opinion granting conditional certification, the Court will postpone addressing the details of plaintiff's proposed form or method of notice because some of Protech's objections may be moot. Protech has not yet suggested which methods for delivery of the notice it prefers; while some of plaintiff's proposed methods may be duplicative as they now stand, notice still must be reasonably structured to attempt to reach all potential plaintiffs. And, in order to send the notice, plaintiff is entitled to the contact information for potential plaintiffs (unless the notice will otherwise reach some potential plaintiffs, such as if Protech includes the notice to current employees in their payroll envelopes). The Court will give the parties the opportunity to meet and confer on these issues.

## CONCLUSION

For the foregoing reasons, we grant plaintiff's motion for conditional certification of a collective action under the FLSA (doc. # 25). However, we deny plaintiff's request to approve the form of notice and consent attached to the motion. We direct the parties to meet and confer and, by March 6, 2017, file a joint document proposing the form of notice and consent and the method for its delivery to potential plaintiffs. To the extent the parties disagree, they shall set forth their disagreements (and their respective proposals) in the joint document. The matter is set for a status hearing on March 9, 2017 at 9:00 a.m.

ENTER:

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

DATE: February 21, 2017